Frank ALBI and Marietta Lupee Albi, Respondents,

v.

Nannie R. REED, Appellant.

No. 44422.

Supreme Court of Missouri.

Division No. 2.

Sept. 12, 1955.

O. J. Adams, Hamilton, J. M. Loomis, Kansas City, for appellant.

Geo. W. Meyer, David W. Barry, Meyer, Smith, Wetzel & Barry, Kansas City, for respondents.

BARRETT, Commissioner.

The parties to this action are Mrs. Nannie Reed, a widow now past eighty years of age, and Mr. Frank Albi, a naturalized Italian seventy years of age. Mr. Albi has been employed by the Kansas City Terminal Railroad for more than forty-five years. Mrs. Reed and Mr. and Mrs. Albi are neighbors and own adjoining properties. In 1925 Mrs. Reed and her husband purchased the property known as 3517 Morrell and in 1943 the Albis purchased 3519 Morrell. When the Reeds purchased and moved into 3517 Morrell there was a fence between their property and the adjoining property, 3519 Morrell, now owned by the Albis. The fence remained there until 1950 when Mrs. Reed, after a survey, took the existing fence down and built a new fence east of the old one, despite the warnings and protests of Mr. Albi and his lawyer. Upon the removal of the old fence and the building of the newly located one Mr. and Mrs. Albi instituted this action against Mrs. Reed. Upon the trial of the case the court found all the issues in favor of the plaintiffs, Mr. and Mrs. Albi, and Mrs. Reed has appealed the cause to this court. Among other things the court enjoined Mrs. Reed from maintaining the newly constructed fence, the court found that her removal of the old fence and the building of the new was

wilful and awarded Mr. and Mrs. Albi $75 actual damages and $225 punitive damages.

The first and obvious question is this court's jurisdiction, the determination of which is, in a measure, determinative of the appeal on its merits. The parties are not in agreement as to the kind or type of action involved, the appellant says that the action is in ejectment while the respondents say, simply, that it is a suit in equity. The action as originally filed was in two counts, the counts are not separately denominated but the petition is captioned "Petition In Equity For An Injunction And For Trespass And Damages And To Quiet Title." In the first count the petition sets forth the ownership and detailed legal discription of the Albis' property, the fact of the boundary line fence and the claim of adverse possession by them and their predecessors in title of all the land up to the fence and, consequently, their title to the lot up to the old fence. In that count the fact of Mrs. Reed's ownership of the adjoining property is stated, her wilful and wanton entry upon their property, her removal of the old fence and the construction of the new one are alleged. In that count of the petition the plaintiffs asked for an injunction and actual and punitive damages. The second count alleged that Mrs. Reed claimed some interest in the described property and the court was asked to try, ascertain and determine the estate, title and interest of the parties. Mrs. Reed's answer was in effect a general denial. At the conclusion of the case the plaintiffs dismissed, so the judgment and decree recite, the second count of their petition. In its findings the court found the Albis' ownership of their described lot and fifteen years' adverse possession by them and their predecessors of a second described tract (the area between the old and the new fence) and consequently title to that strip by adverse possession. In addition, the court found the boundary line to be the old fence and that the new fence encroached upon the plaintiffs' land. The judgment, in addition to awarding damages and an injunction and despite the dismissal of the second count, recites, "It Is Therefore Ordered, Adjudged and Decreed by the

Court that plaintiffs are vested with the fee simple title in and to that portion of the real estate described in their petition and hereinabove referred to as Tract I and Tract II; and It Is Further Ordered, Adjudged and Decreed and Found that defendant, Nannie R. Reed and her unknown heirs, consorts, grantees and successors have no right, title, claim or interest in the above described Tracts I and II."

The form of the action is not determinative of this court's jurisdiction, Bussen v. Del Commune, Mo., 195 S.W.2d 666, the important and determinative factor is that title to real estate must be in issue and the judgment sought or rendered must affect or operate upon the title, that is determine title in some measure or degree adversely to one litigant and in favor of another. Nettleton Bank v. Estate of McGauhey, 318 Mo. 948, 2 S.W.2d 771, 773. If the action is in ejectment and the court makes a general finding for one of the parties and an adjudication of title is not in fact sought but is ascertained for the purpose of entering the appropriate judgment for possession, title to real estate is but incidentally or collaterally involved and the case does not involve the title to real estate so as to confer exclusive appellate jurisdiction upon this court. Const. Art. 5, § 3, V.A.M.S.; Townsend v. Lawrence, Mo., 262 S.W.2d 55; Motchar v. Hollingsworth, Mo., 162 S.W.2d 805; Ballenger v. Windes, 338 Mo. 1039, 93 S.W.2d 882. Likewise, generally, if the action is in equity and an injunction is sought to protect an easement or to compel the removal of a dam or a fence, the court in finding the prescriptive right does so but incidentally to the granting of the relief sought and title to real estate is not involved in the jurisdictional sense. Winslow v. Sauerwein, Mo.App., 272 S.W.2d 836; Judge v. Durham, Mo., 274 S.W.2d 247; Gibson v. Sharp, Mo., 270 S.W.2d 721. But in this case, whatever the form of the action, the court not only found the fact of title but the court purports in its judgment to adjudicate and determine title in no uncertain terms and even though the judgment in that respect was not warranted for appellate, jurisdictional purposes

the case involves the title to real estate and jurisdiction of the appeal is appropriately in this court. Riley v. La Font, Mo., 174 S.W.2d 857; State ex rel. Place v. Bland, 353 Mo. 639, 183 S.W.2d 878; State ex. rel. Brown v. Hughes, 345 Mo. 958, 137 S.W.2d 544.

The appellant, Mrs. Reed, contends however, since neither party asked for a determination of title, that the judgment is void in so far as it adjudicates the title to real estate. Riley v. La Font, supra. The respondents contend that the parties expressly or impliedly tried title, and in any event, title being within the proof and having been adjudicated their failure to amend the pleadings to conform to the proof "does not affect the result of the trial of these issues." Section 509.500 RSMo 1949, V.A.M.S. Under this statute it has been held proper in a quiet title suit, where the plaintiff claimed to be the owner in fee simple of a strip of ground by adverse possession, for the court, in conformity with the proof, to decree an easement in a part of the strip. Roberts v. Quisenberry, 362 Mo. 404, 242 S.W.2d 26. It is not necessary to say whether the statute is broad enough to cover this case in which the plaintiffs have dismissed the count to quiet title, thereby repelling the inference that title was expressly or tacitly tried. Neither is it necessary to say whether their failure to amend to conform to the proof affects the result of the issues in fact decreed. Here, upon the court's refusal to grant Mrs. Reed a continuance, her counsel refused to participate in the trial of the case and it may not be said that she either expressly or tacitly tried any issue. But in this connection the decisive factor in this case is that while Mr. and Mrs. Albi may have incidentally shown and tried title that was not their principal purpose—the central theme of all the proof was the location of the boundary line between the two properties.

 It may have been possible from the record and a plat relied upon by the plaintiffs for the court to have found title and to have entered a judgment so legally describing a strip of ground as to permit enforcement of the court's decree in either ejectment or to quiet title, but the proof was not as certain and satisfying as it should have been for the purpose of permanently settling the title. Jones v. Eaton, 307 Mo. 172, 270 S.W. 105; Hecker v. Bleish, 319 Mo. 149, 3 S.W.2d 1008. But, as indicated, the decisive factor is that consideration of the whole record reveals that the issue in fact tried and litigated in this case was the location of the boundary line between the two properties and not title. Jones v. Eaton, supra. The fact is demonstrated by this question and answer near the end of the trial, "Q. What you are asking the Court to do is make a finding that the true boundary line between your property and Mrs. Reed's follows the old curbing and follows the old fence posts. Is that right? * * * A. That is right." This may appear to be quibbling but all of the oral testimony was directed to that issue— whether the old fence was and had been recognized as the boundary line—and while it may have been possible from the survey relied upon by the plaintiffs for the court to have found and legally described a strip of ground, the fact was that the survey was made for the express purpose of locating the true boundary line which, according to the engineer's field notes and plat, was along the line of the old fence. The location of a boundary line may arise and be adjudicated in a variety of actions, some of which would involve the title to real estate and some of which would not. 11 C.J.S., Boundaries, §§ 95, 99, pp. 681, 684; 8 Am.Jur., Secs. 85, 86, pp. 806, 807. This is not to say that the cases would always govern in boundary line disputes, but it has been held that ejectment and not a suit in equity is the appropriate remedy for the determination of a boundary line, Wilson v. Hart, 98 Mo. 618, 12 S.W. 249; Robertson v. Drone, 100 Mo. 273, 13 S.W. 405, and that a suit to establish a boundary line does not so involve the title to real estate as to confer appellate jurisdiction upon this court. Evens & Howard Fire Brick Co. v. St. Louis Smelting & Refining Co., 48 Mo.App. 634, 636, 637; Hammontree v.

Huber, 39 Mo.App. 326. Upon this particular record, the pleadings and the proof, the court erroneously decreed the title to real estate.

■ However, as stated in the beginning, in the first count the plaintiffs asked for an injunction and actual and punitive damages for trespass and the appellant does not expressly question the propriety of the court's having granted an injunction. Regardless of the plat or survey and its admissibility, the oral evidence shows, as pleaded, that the old fence was the boundary line, it was there when Mrs. Reed moved into her property in 1925. The strip of ground between the old fence and the Albis' property was occupied by them and their predecessors in title, the Fuquas, from 1936 to 1950 when Mrs. Reed removed the fence. They maintained and repaired the old fence, planted and cultivated flowers alongside the fence and, in short, as the court could and did find, adversely occupied the strip of ground to the old fence, claiming all the while to be the owners of the occupied ground. Chostner v. Schrock, Mo., 64 S.W.2d 664. The old fence being the line, the evidence shows that Mrs. Reed, despite the warnings and protests of the plaintiffs, removed both the fence and the gates. Mr. Albi testified that the value of the old fence was $35 to $40 and the value of the gates the same. Mrs. Reed, admittedly, erected a new fence east of the location of the old one. Thus in intentionally removing the old fence and erecting a new one Mrs. Reed knowingly and without just cause or excuse trespassed and, within the pleading and certainly within the proof, was therefore liable to Mr. and Mrs. Albi for both actual and punitive damages in the sum reasonably found. Parker v. Shackelford, 61 Mo. 68; Beetschen v. Shell Pipe Line Corp., 363 Mo. 751, 258 S.W.2d 785; 36 C.J.S., Fences, §§ 16, 17, pp. 659–664.

This action was instituted on October 19, 1950, and for various reasons, sometimes by consent of the parties, was continued from time to time and finally set for trial on February 26, 1954. Two days previously defendant's counsel notified plaintiffs' counsel of their intention to apply for a continuance. On the day the case was set for trial counsel filed a written "Application And Affidavit For Continuance." One of her lawyers stated that "on this date," the 22nd, he had interviewed his client who was "past eighty years of age" and that she was ill, "suffering from high blood pressure, nervousness and physical and mental exhaustion, and that her physical and mental condition is such at this time, * * * that she is not physically and mentally in condition to appear in court * * * on the date said cause is set for trial, and that her condition is such that she will be unable to appear in court for an indefinite period of time; * * *." In support of the application there was a statement from a physician stating that she was under medical care and not physically or mentally capable of attending court at that time. The court considered the statements as in evidence and there was no other or further proof or offer of proof by the appellant. Upon the court's overruling the application counsel announced that they would not participate in the proceedings and the trial proceeded, as indicated, in the absence of Mrs. Reed and her counsel. It is now urged that the court, in refusing to grant a continuance, abused its discretion to the prejudice of the appellant and for that reason a new trial should now be granted.

■ Of course, a litigant is entitled to be present at his own trial, particularly so if his presence is necessary to a proper presentation of his cause or his presence is necessary as a witness. 17 C.J.S., Continuances, §§ 27, 29, 113, pp. 210, 213, 279; Gregg v. Kroensbein, Mo.App., 209 S.W. 113. And the court, "for good cause shown", Section 510.080 RSMo 1949, V.A. M.S., may, in its discretion, grant a continuance because of the absence of a party, especially if the absence is due to illness. 12 Am.Jur., Sec. 15, p. 457. It would serve no useful purpose to set forth all the rules in detail and note the distinctions in circumstances, in some instances it has been

held that the court abused its discretion in refusing a continuance because of the unavoidable absence of a party. J. H. Rottman Distilling Co. v. Van Frank, 88 Mo. App. 50. But in this case there was no unexpected, temporary, or sudden illness, with notice that the case had been set for trial for some time and knowing of Mrs. Reed's age and its attendant infirmities, the notice and application were not timely. There is no statement in the application that Mrs. Reed's presence was essential or indispensable to a proper defense of the action and it is not claimed or stated that her presence was necessary as a witness, and, with knowledge of her condition, there was no effort to procure her deposition—although the plaintiffs used parts of her deposition taken at their instance on November 29, 1951. In addition, upon the hearing of the application for a continuance, Mr. Albi testified that on that day, February 26, 1954, he saw Mrs. Reed returning from the grocery store carrying "a big bag of groceries." In these circumstances the case is not comparable to McLane v. Harris, 1 Mo. 700, or to Nichols v. Headley Grocer Co., 66 Mo.App. 321, and it may not be said that the court so abused its discretion in refusing a continuance as to compel the granting of a new trial. Annotation 42 L.R.A.,N.S., 660, 665; Smith v. Smith, 132 Mo. 681, 34 S.W. 471; McGinley v. McGinley, Mo.App., 170 S.W. 2d 938.

In accordance with the views set forth in this opinion the judgment is reversed in so far as it adjudicates the title to real estate, in all other respects the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.