Roberta Anne (Morrow)
FINLEY, Respondent,

v.

Robert Harold MORROW, Appellant.

No. 14034.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 28, 1985.

Motion for Rehearing or Transfer to
Supreme Court Denied Sept. 16, 1985.

Fred Charles Moon, Moon & Moon,
Springfield, for respondent.

Loren R. Honecker, Sherwood, Honecker
& Bender, for appellant.

PREWITT, Chief Judge.

Appellant Robert Harold Morrow appeals from an order overruling his motion to quash garnishment. Respondent, Robert's former wife, was seeking to collect back due child support ordered by a decree dissolving the parties' marriage. The court's order denying appellant's motion is appealable under § 512.020, RSMo 1978 as a "special order after final judgment". *Anderson v. Anderson,* 404 S.W.2d 206, 207 (Mo. App.1966).

Appellant's point relied on states:

The trial court erroneously construed and applied the law in overruling appellant's motion to quash because appellant was entitled to credit for excess child support payments paid to respondent in that said payments were made by reason of a mistake of fact and thus were not voluntary overpayments.

During the parties' marriage they had three children. At the time the parties separated appellant's "net income" was a "little bit less than $1,000.00 a month". He was paid twice a month. Appellant and respondent orally agreed that appellant would "give her $250.00 from the top", twice a month. Appellant stated that this was to continue "until it was resolved."

On November 26, 1979, a joint petition seeking dissolution of their marriage was filed. Filed with the petition was a "Property Settlement Agreement" signed by the parties that day. The agreement recited that respondent should have custody of the parties' three minor children and that appellant "shall pay the sum and amount of

One Hundred Seventy Dollars ($170.00) per month for child support, which began November 1, 1979, payable $85.00 twice monthly."

On January 3, 1980, respondent and her attorney appeared in court on the petition. Appellant did not appear and was not represented. Following respondent's testimony the court granted the dissolution, found the property settlement agreement conscionable and made it a part of the dissolution decree.[1] Neither in his oral findings nor in the dissolution decree did the judge set forth the amount of child support. In both instances reference was made to the property settlement agreement. Thereafter, for twenty-three months appellant paid respondent $510 per month. Under the decree and property settlement agreement appellant's only monetary obligation to respondent was child support.

Appellant was out of the county on a work assignment when the dissolution was granted. He testified that upon his return respondent told him that the court set child support payments at $510 per month. Respondent did not deny saying that. She testified that she and appellant had agreed that she would receive $510. Respondent said that the property settlement agreement was meant to be "$170 per child per month". She indicated she thought that it had been written that way and followed by the court.

Twenty-three months after the dissolution, following his remarriage, appellant contacted an attorney to see if the child support could be reduced. After obtaining a copy of the decree and property settlement agreement, the attorney advised appellant that he had been overpaying child support. The attorney also sent a letter to respondent advising her of the overpayment. Thereafter, for the next six months appellant paid $170 per month child support. When his employment was termi-

nated, he made sporadic payments of less than $170.00 per month and later a payment of $1,200.00. When appellant secured part-time employment, respondent caused an execution to be issued seeking back child support and a writ of sequestration to be served on an official of his employer. Appellant then filed the motion seeking to "quash the garnishment". Following an evidentiary hearing, the trial court, relying upon *Webb v. Webb*, 475 S.W.2d 134 (Mo.App.1971), overruled the motion.

■ As a general rule, with certain exceptions, as when the parties have agreed, or when other equitable considerations exist, a parent who voluntarily exceeds decreed child support payments may not claim credit against future payments. *In re Marriage of Simmons*, 636 S.W.2d 351, 352–353 (Mo.App.1982); *Webb v. Webb*, supra, 475 S.W.2d at 135–136. See also *M v. M*, 313 S.W.2d 209, 213–214 (Mo.App.1958); *Praught v. Carpenter*, 657 S.W.2d 68, 70 (Mo.App.1983); *Raczynski v. Raczynski*, 558 P.2d 425, 429 (Okla.App.1976) (child's welfare must be considered); 24 Am. Jur.2d, Divorce and Separation, § 1077, p. 1061 (1983); Annot., Right to Credit on Accrued Support Payments for Time Child is in Father's Custody or For other Voluntary Expenditures, 47 A.L.R.3d 1031, 1035 (1973).[2]

■ Overpayments due to an erroneous interpretation or recollection of the terms of a contract for child support which is approved by the court does not allow the payor to recoup the overpayments by paying lesser sums in the future and claiming a setoff. *Webb v. Webb*, supra, 475 S.W.2d at 135–136.

■ We are not cited to any cases and find none in Missouri where credit was allowed when the overpayments of court ordered child support were made to the

---

1. The trial judge who ruled appellant's motion to quash and the parties' current attorneys were not involved in the original dissolution proceedings.

2. For a discussion of the general rule in cases of mistaken payments, see *Western Casualty & Surety v. Kohm*, 638 S.W.2d 798, 800 (Mo.App. 1982), and *Handly v. Lyons*, 475 S.W.2d 451, 462 (Mo.App.1971).

children's custodian. There are practical considerations to those results. Unless it is agreed that the overpayments will be credited for future payments, it is likely that the custodian will anticipate receiving future payments in accordance with the decree. The payments are for the benefit of the children, and the children's welfare could be affected if the future payments are not made. The prior amounts received often would have been spent and the custodian might be dependent on future payments to have funds to care for the children. Unless there is an agreement that credit be given, only exceptional circumstances not affecting the welfare of the children would justify allowing the credit. No exceptional circumstances are present here.

If respondent told appellant that the court set child support payments at $510, there is nothing in the record establishing that she believed otherwise. Respondent testified that she understood the child support provided in the property settlement agreement was to be "$170 per child per month". The trial court did not state the amount of child support either orally or in the decree but referred to the agreement for the amount. The agreement refers to $170, and if respondent believed that was to be per child, that would make child support $510. Five hundred ten dollars a month was paid to respondent prior to the dissolution. As appellant got a copy of the decree and paid $510 for 23 months, his belief may have been the same as respondent's. Reducing the support by agreement from $510 to $170 under the circumstances here seems unusual.

No findings of fact were made, so we must consider that the trial court found that respondent did not knowingly misstate the decreed child support. All fact issues upon which no specific findings are made are considered as having been found in accordance with the result reached. Rule 73.01(a)(2). Giving due regard to the opportunity of the trial court to have judged the credibility of the witnesses, Rule 73.-01(c)(2), that finding was not erroneous.

That there was a mistake of fact is not enough for appellant to receive relief. There was no agreement to credit the overpayments in the future, and as it was not established that respondent caused the overpayments by intentionally misrepresenting the amount awarded, no equitable considerations were shown entitling appellant to the credit sought.

The judgment is affirmed.

HOGAN, P.J., and MAUS and CROW, JJ., concur.